RAMÓN A. RIVERA RIVERA, ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada; ALEJANDRO OTERO LÓPEZ, lesionado.

*Número:* O-71-286      *Resuelto:* 5 de enero de 1973

*E. Delgado Roque, Jorge Márquez Gómez* y *Miguel A. Guzmán Soto,* abogados del recurrente; no comparecieron los abogados de la Comisión Industrial ni del lesionado.

PER CURIAM: Recurre el Administrador del Fondo del Seguro del Estado (en lo sucesivo designado como el Fondo), en 7 de diciembre de 1971, de la resolución de la Comisión Industrial que determinó que el Dr. Otero López ". . . era un empleado protegido por la Ley de Compensaciones por accidentes del trabajo . . . y se Ordena al Administrador del Fondo . . . le otorgue a este obrero la máxima protección de la ley."

Apunta el recurrente que en la fecha del accidente en que se lesionó el referido galeno, éste era un contratista independiente y no un obrero o empleado del Fondo y que el alegado accidente no era uno de los protegidos por la referida ley pues

el accidente no provino de un acto o función inherente a su trabajo o empleo o en el curso de éste y como consecuencia del mismo (11 L.P.R.A. sec. 2), toda vez que ocurrió con motivo de una llamada telefónica en la residencia del lesionado y ". . . nada tenía que ver con la prestación de asistencia médica en su propio Dispensario en Manatí, Puerto Rico, a los lesionados del Fondo del Seguro del Estado."

Los hechos del caso, según se desprenden de la resolución de la Comisión Industrial, se resumen así:

El lesionado era un médico cirujano. Tenía su consultorio-dispensario particular en una propiedad que había alquilado y por la cual pagaba $50 mensuales, en la Calle McKinley Núm. 50 de Manatí, donde él pagaba por los servicios de luz y agua allí consumidos. El sueldo de su secretaria lo pagaba él. Allí también trabajaba su hija Ángeles Otero Ramos, el sueldo de la cual lo pagaba así mismo el lesionado. Hubo prueba de que el lesionado mantenía en vigor, como patrono, una póliza expedida por el Fondo la cual cubría los empleados de su consultorio-dispensario. En este establecimiento, el lesionado atendía pacientes particulares a quienes le cobraba y, además, allí prestaba servicios a pacientes ". . . del Fondo del Seguro del Estado y a pacientes privados." Rendía sus servicios al Fondo mediante contrato bajo el cual recibía una remuneración de $500 mensuales. Había rendido servicios al Fondo desde el 1917.

El día 4 de febrero de 1969, el lesionado ". . . recibió una llamada del Alcalde de Manatí [a eso de la una de la tarde] para que fuera a atender un empleado que se había lesionado." Testificó el Dr. Otero López ante la Comisión que ". . . como médico del Fondo del Estado tenía la obligación de atender el obrero lesionado." Una nieta del lesionado recibió la llamada, la pasó a su mamá y ésta al lesionado quien estaba en el baño. Al salir del baño, resbaló en algo húmedo, y cayó de costado, fracturándose la cadera izquierda.

El Alcalde de Manatí testificó que en el referido día, a eso de las 12:30 P.M., un obrero cayó de un camión y quedó inconsciente. Al notificársele esto, llamó al Dr. Otero López a su casa y después fue a ver al obrero. Testificó que en una declaración jurada prestada por él al Fondo, informó que ". . . el obrero después que volvió en sí, no quiso ir a ver a nadie y dijo que se encontraba bien de todo . . . que luego que el obrero volvió en sí, después de quince minutos siguió trabajando sin asistencia médica." El propio obrero confirmó en su testimonio lo relacionado por el alcalde en dicha declaración jurada.

La lesión sufrida por el Dr. Otero López en el referido accidente requirió que permaneciese recluido en el Hospital Pavía varios meses. De los récords del Fondo aparece que la póliza que cubría el consultorio del Dr. Otero López no se renovó a partir del 30 de junio de 1969 debido a que el lesionado cerró dicho consultorio y se retiró por motivo de edad y salud.

En 8 de diciembre de 1969, la Sra. Ángeles Otero Ramos, hija del lesionado, dirigió una comunicación al Fondo solicitando se investigase y determinase si el accidente sufrido por su padre, relacionado en dicha comunicación ". . . está cubierto por la ley." En 2 de septiembre de 1970, el Administrador del Fondo denegó la reclamación por ser el Dr. Otero López un contratista independiente y, además, porque el accidente no estaba cubierto por la ley. La Comisión revocó esta determinación en 24 de agosto de 1971. La reconsideración de la misma fue denegada en 5 de noviembre de 1971 y esta última resolución fue notificada a las partes el 23 de dicho mes y año.

■ Con respecto a cuándo es una persona un contratista independiente, dijimos en *Sierra Berdecía* v. *Pedro A. Pizá, Inc.*, 86 D.P.R. 447, 455 (1962), que:

"Los factores principales que los tribunales han considerado importantes para determinar si se trata de un empleado o de un contratista independiente son, sin pretender enumerarlos todos,

los siguientes: 1—naturaleza, extensión y grado de control por parte del principal; 2—el grado de iniciativa o juicio que despliega el vendedor en sus gestiones; 3—la inversión que hace el vendedor en equipo y facilidades para poder realizar la labor, y si para ello es necesario establecer una organización de negocios independiente; y 4—posibilidad de ganancias o pérdidas en las operaciones de venta."

Dijimos en *Mariani* v. *Christy*, 73 D.P.R. 782, 798, (1952), que:

"El criterio más importante se refiere al control que se pueda reservar al patrono sobre el trabajo. Independientemente de si se ejercita o no, lo importante es la existencia del derecho o la autoridad para intervenir o controlar, que convertiría la otra persona en empleado y no en contratista independiente, al igual que es importante determinar si las instrucciones dadas tendrían que ser obedecidas. Ese mismo control puede ser ejercitado en distintas formas, y la relación entre las partes se podría determinar por la forma en que se ejercite ese control a la luz de las circunstancias de cada caso. Si se controlan los medios y la manera de hacer el trabajo, la persona a cargo de la labor sería un empleado y surgiría la relación de contratista independiente cuando la persona que haga el trabajo está sometida a la voluntad del patrono solamente en cuanto al resultado pero no en cuanto a los medios y manera de cumplimentarlo. La retención por el dueño del derecho de inspeccionar y supervisar es compatible con el *status* de contratista independiente. El control de los trabajadores que realizan el trabajo manual es un elemento importante, pero si el dueño se reserva el derecho para despedir a los empleados de un supuesto contratista, ello implica que este último no es independiente. Además, es importante determinar si el dueño suministra los trabajadores y el equipo para hacer el trabajo, aunque ello no es decisivo. En cuanto al pago surge la relación de contratista independiente cuando el contratista se obliga a hacer el trabajo en su totalidad a base de una suma específica, y cuando su remuneración se computa con referencia a la cantidad de trabajo realizado por él. Sin embargo, el hecho de que el pago se verifique sobre la base de cantidad de trabajo no implica de por sí que exista la relación de contratista independiente cuando el resto de la evidencia demuestra que la persona utilizada es un empleado. La identidad de la persona que

paga los empleados es una circunstancia a ser considerada, aunque no se puede ignorar la posibilidad de que una persona haga los pagos a los fines de obtener un reembolso posterior. Otro elemento importante se refiere al poder de terminar el contrato en cualquier momento ya que de existir tal poder la persona utilizada no sería un contratista independiente. También es posible que una persona sea un contratista independiente para ciertos fines y que al mismo tiempo sea un empleado de la otra persona para otros fines, y la decisión dependería en cuanto a cuál sería la situación en el momento en que se produce el daño."

Véase, además, *Nazario* v. *Vélez*, 97 D.P.R. 458 (1969), en el cual se recopila nuestra jurisprudencia sobre la aplicación del concepto del contratista independiente en el derecho concerniente a compensación por accidentes del trabajo.

■ La prueba aducida en este caso establece que el Dr. Otero López:

1.—Rendía servicios al Fondo bajo un contrato por virtud del cual el Fondo le pagaba $500 mensuales por tales servicios.

2.—Dichos servicios consistían en prestar asistencia médica a obreros cubiertos por el Fondo.

3.—Tales servicios se prestaban en el consultorio-dispensario establecido en Manatí por el Dr. Otero López, quien pagaba (a) los gastos del mismo, y (b) los empleados que él escogía para asistirlo en dicho establecimiento.

4.—En ese consultorio se trataban pacientes particulares en adición a los obreros cubiertos por el Fondo.

5.—No aparece que el Fondo interviniese o controlase en forma alguna los medios y manera de prestar tales servicios; ni que controlase a las personas empleadas por el Dr. Otero López en su consultorio en el trabajo que allí realizaban; ni que se hubiera reservado el Fondo el derecho de despedirlos; ni que el Fondo le suministrase al Dr. Otero López empleados y equipo para prestar sus servicios en su consultorio-dispensario.

6.—La operación del consultorio-dispensario aparecía cubierta por una póliza expedida por el Fondo bajo la cual aparecía el Dr. Otero López como un patrono de las personas empleadas por él en el referido consultorio-dispensario.

En vista de las circunstancias previamente relacionadas no se puede sostener la conclusión de que el Dr. Otero López era un "empleado" al servicio del Fondo tal y como se define en la ley (11 L.P.R.A. sec. 39).

De lo expuesto, concluimos que *se debe revocar la resolución de la Comisión Industrial previamente relacionada y ordenar a dicha Comisión que dicte otra confirmando la resolución del Administrador del Fondo del Seguro del Estado.*