MR. JUSTICE GULBRANDSON
delivered the Opinion of the Court.
This case comes on appeal from an order granting plaintiff’s motion for partial summary judgment on September 14, 1982, by the District Court of the Second Judicial District, Silver Bow County. We vacate the order of the District Court.
Pursuant to a 1944 agreement, Reagan’s predecessor in interest and his associates (Reagan Associates) owned a twenty percent “net proceeds” interest in profits derived from production obtained from certain oil and gas leases on the Blackfoot Indian Reservation. The twenty percent “net proceeds” interest was to be paid by Union Oil. Pursuant to an agreement entered into on October 18, 1954, the “net proceeds” interest was converted into a “general obligation and liability” of Union Oil and Montana Power to pay Reagan Associates certain sums of money annually. The reason for converting the “net proceeds interest” to a “general obligation and liability” was that the parties were aware that the Department of Interior might not approve an assignment of an overriding royalty on a Tribal lease.
Under the agreement, the “net proceeds” interest was quit-claimed to Union Oil in return for Reagan Associates receiving a “general obligation and liability” of Union and Montana Power to pay Reagan Associates certain sums of money “measured by and that [were] equal in amount” to a fixed percentage of the value of the petroleum produced. The agreement did not use the terms “royalty” or “overrid *4 ing royalty” and was silent as to payment of taxes. Plaintiff, Barney Reagan, succeeded to ownership of the “general obligation and liability” upon the death of his father in 1969.
Since 1954, Union and Montana Power have deducted from the payments under the agreement certain sums for payment of various state and federal taxes including the following:
(a) Oil and gas conservation tax, Section 82-11-131, MCA.
(b) Oil and gas severance tax, Section 15-36-101, MCA.
(c) Resource indemnity trust tax, Section 15-38-104, MCA.
(d) Oil and gas net proceeds tax, Title 15, Chapter 23, part 6, MCA.
(e) Windfall Profits Tax, 26 U.S.C.A. Sections 4986 et. seq.
In 1970, Reagan executed and delivered to Union Oil division orders pertaining to the production of oil and gas. The division orders provided that “[t]he undersigned . . . certify and warrant they are the legal owners in the proportions set out ... of all the oil, and in the proceeds from casinghead gas produced from ...” Union’s Tribal leases.
The division orders stated that payments should be made to the respective parties for amounts due, “less any taxes required by law to be deducted and paid by [Union].” In addition, Section (5) of the division orders provided:
“It is distinctly understood that the Owners will pay their respective portions of all taxes imposed upon the products produced from said land, including but not by way of limitation, taxes imposed upon the production, severance, gathering and disposition of such products, and if Union pays any such tax on account of the interests of the Owners, the amount so paid may be deducted from payments due the Owners hereunder.”
The central issue before the District Court was whether Union Oil and Montana Power had properly withheld portions of Reagan’s annual payments for tax purposes because Reagan held a taxable “economic interest.”
Reagan filed suit against Union and Montana Power in May 1981 alleging that the deductions for taxes were in *5 derogation of the 1954 agreement and requesting judgment in the amount of all the sums withheld together with interest from the dates of such withholdings. On June 30, 1982, Reagan moved for a partial summary judgment pursuant to Rule 56(c) of the Montana Rules of Civil Procedure. Union and Montana Power filed opposing briefs on August 19, 1982. On September 14, 1982, the District Court entered its order granting Reagan partial summary judgment. The District Court ordered that any and all payments made pursuant to the 1954 agreement were not subject to the taxes at issue; that contrary to the express provisions of the 1954 agreement, defendants unlawfully withheld money from Reagan; that the money had to be accounted for and returned; and that the defendants were prohibited from any future withholdings. Further, the District Court, upon Reagan’s concession, applied the statute of limitation defense raised (Section 27-2-202(1), MCA), and limited Reagan’s recovery to amounts withheld during the eight years preceding the commencement of the action. In addition, the District Court denied defendant’s motion for leave to conduct further discovery.
On September 23, 1982 the defendants moved the District Court for an order rescinding, amending or modifying its order granting partial summary judgment. On November 12, 1982, the District Court denied the motion stating “. . . as a matter of law the written contract of the parties of October 18, 1954, created a general obligation and liability of Union Oil and Montana Power and not a economic interest with respect to the oil or gas in place in the ground. This is fatal to Defendant’s contentions.” Thereafter, defendants filed their notice of appeal.
Appellants, Union Oil and Montana Power, raise six issues on appeal:
(1) Did the District Court err in granting respondent’s motion for partial summary judgment ruling as a matter of law that there was no genuine issue of material fact as to respondent’s payments being non-taxable?
*6 (2) Did the division orders executed by respondent create a question of fact as to authorization by respondent of deduction for taxes?
(3) Was there a question of fact regarding the defense of laches and, as a matter of law, the appellants could not rely on the defense of laches?
(4) Did the District Court’s denial of appellants’ motion for leave to conduct further discovery, which was filed after submission of respondent’s motion for summary judgment, constitute reversible error?
(5) Did the District Court’s order granting partial summary judgment on September 14, 1982, and its further order of November 10, 1982, sufficiently explain the basis for granting respondent’s motion for partial summary judgment?
(6) Did the District Court err in awarding respondent prejudgment interest?
We find the first two issues dispositive of the matter.
The purpose of summary judgment is to encourage judicial economy by eliminating unnecessary trials and an order for summary judgment will be upheld in those cases in which the complaining party fails to demonstrate the existence of material and substantial facts that would alter the decision made below. Cereck v. Albertson’s, Inc. (Mont. 1981), [195 Mont. 409,] 637 P.2d 509, 38 St.Rep. 1986. Summary judgment is never to be used as a substitute for tried if a factual controversy exists. Reaves v. Reinbold (Mont. 1980), 615 P.2d 896, 37 St.Rep. 1500. The standard that an appellate court applies in reviewing a grant or denial of a motion for summary judgment is the same as that utilized by the trial court initially under Rule 56, M.R.Civ.P. — a summary judgment is proper when it appears “that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” 10 Wright and Miller, Federal Practice and Procedure, Section 2716 p. 643. Summary judgment is proper only if the pleadings, depositions, answers to interrogatories and admissions *7 on file show there is no genuine issue of material fact. Anderson v. Applebury (1977), 173 Mont. 411, 567 P.2d 951. If there is any doubt as to the propriety of a motion for summary judgment, it should be denied. Cheyenne Western Bank v. Young (1978), 179 Mont. 492, 587 P.2d 401; Kober v. Stewart (1966), 148 Mont. 117, 417 P.2d 476.
In the present case, the District Court determined that there was no genuine issue of material fact because the October 18, 1954 contract created a “general obligation and liability” and not an “economic interest” thereby precluding appellants from withholding portions of respondent’s annual payments for tax purposes. However, the record indicates there was a genuine issue of fact as to whether the October 18, 1954 agreement created a taxable “economic interest.” Although the agreement refers to respondent’s payment as a “general obligation and liability,” the payments were totally dependent on the amount and value of production. In Forbes v. Mid-Northern Oil Company (1935), 100 Mont. 10, 45 P.2d 673, we said that the nature of the interest is determined by the instrument considered as a whole and not by the labels used by the parties. Similarly, in Palmer v. Bender (1933), 287 U.S. 551, 557, 53 S.Ct. 225, 77 L.Ed. 489, 493, the United States Supreme Court said that the retention of an ownership or legal interest in the oil is not a necessary prerequisite to an “economic interest.” An “economic interest” is defined in Treas.Reg., Section 1.6.11-1(b)(1) as follows:
“An economic interest is possessed in every case in which the taxpayer has acquired, by investment, any interest in mineral in place ... by any form of legal relationship, income derived from the extraction of the mineral ... to which he must look for a return of his captial [sic].”
Although it would be premature for us to decide whether the October 18, 1954 agreement created an “economic interest,” this was a genuine issue of material fact and the District Court erred in granting respondent’s motion for partial summary judgment.
*8 In addition, the conduct of the parties in the execution and acquiescence to the terms of the division orders created a genuine issue of fact. Specifically, the division orders provided that respondent certified and warranted that he was the legal owner of a certain portion of the oil and gas produced by appellants. Moreover, section (5) of the orders states that respondent will pay his respective portion of taxes imposed upon production, including but not by way of limitation, taxes for production, severance and gathering. Section (5) of the division orders also provides, “. . . and if Union pays any such tax on account of the interests of the Owners, the amount so paid may be deducted from payments due the Owners hereunder.” Thus, the language of the division orders, if used to supplement the terms of the 1954 agreement, could be construed as a representation of ownership of the oil and gas by respondent and as authorizing the challenged withholdings.
Williams and Meyers, Oil and Gas Law, Section 705, p. 451, abridged edition, states:
“Insofar as the division or transfer order differs from the lease as concerns the measurement of quantity, quality, price or value of the production, the lease provisions are modified by the provisions of the order as to all parties to the unrevoked order. Thus the lease may provide in very general terms for the payment of royalty on production and the division order (or a contract of sale incorporated in the division order by reference) may contain much more specific provisions on the same matters, which may be inconsistent with details of the lease royalty clause. Under such circumstances the provisions of the division or transfer order govern until such order is revoked.”
Williams and Meyers, Oil and Gas Law, Section 711, p. 455, abridged edition, also states:
“Where there is disagreement over the construction of a particular instrument, the provisions of a division order executed by the parties to such other instrument may be evidence of the proper construction thereof on the theory of *9 contemporaneous construction of the latter instrument by the parties.”
We cannot speculate as to what the parties intended, however, summary judgment is usually inappropriate where the intent of the contracting party is an important consideration. Fulton v. Clark (1975), 167 Mont. 399, 538 P.2d 1371; Kober, supra.
The language of the division orders, which is part of the District Court record, raises a doubt as to the propriety of the partial summary judgment and the motion therefore should have been denied. Cheyenne Western Bank, supra. The party opposing a motion for summary judgment must be afforded the benefit of all reasonable inferences which may be drawn from the offered proof. Reaves, supra.
In addition to the language contained in the division orders, the provisions of the tax statutes at issue should have persuaded the District Court to deny respondent’s motion for partial summary judgment. For example, the oil and gas severance tax, Section 15-36-101(3), MCA, as well as the resource indemnity trust tax, Section 15-38-104, MCA, allow for the deduction of a pro rata share of the tax from payments made in settlements under division of proceeds orders and other contracts.
In sum, there existed genuine issues as to whether the appellants properly withheld portions of respondent’s annual payments and we therefore vacate the decision of the District Court and remand the case for further proceedings.
MR. CHIEF JUSTICE HASWELL and MR. JUSTICES HARRISON and WEBER concur.