Rivera Pérez, Juez Ponente
*695 TEXTO COMPLETO DE LA SENTENCIA
I
¿Tienen derecho los médicos que contrata el Fondo del Seguro del Estado para prestar servicios profesionales a sus clientes, como contratistas independientes, a los beneficios que reciben sus empleados regulares? ¿Son inválidos los contratos suscritos por esa agencia con esas personas como tal, por ser realmente empleados regulares? Esos son los asuntos a resolverse por esta Curia en el presente recurso. Se confirma la sentencia apelada.
Varios facultativos, quienes prestaron servicios profesionales al Fondo del Seguro del Estado mediante contratos por términos de un (1) año, presentaron una demanda contra esa agencia reclamando pagos por concepto de vacaciones regulares, enfermedad, días feriados, bono de navidad y otros privilegios correspondientes a los empleados regulares de la agencia.
En el contrato de servicios profesionales suscrito entre las partes se pactó expresamente entre ellos que no existía relación alguna obrero-patronal. Se estipuló expresa y específicamente que los facultativos operaban en calidad de contratistas independientes, quienes se comprometieron a pagar el seguro social y la contribución sobre ingresos como personas que trabajan por cuenta propia.
La demanda de autos, y sus enmiendas, se fundamentó en la impugnación de la legalidad de los contratos.
El 4 de junio de 1996 se presentó una moción de sentencia sumaria por la parte demandada, aquí apelada, Fondo del Seguro del Estado. El Tribunal de Primera Instancia decidió originalmente declarar sin lugar tal pedimento, por ser necesaria una vista evidenciaría para establecer aspectos de la relación entre las partes y el desempeño de los trabajos. Sin embargo, en reconsideración, resolvió que *696 lo que se pensaba cubrir con esa vista estaba claramente establecido en los contratos suscritos entre las partes, en los cuales se pactó que los galenos no tendrían derecho a ningún tipo de licencia o beneficios marginales. Declaró con lugar la solicitud de sentencia sumaria y dictó sentencia de conformidad. Esa sentencia es objeto del presente recurso de apelación.
II
¿Incurrió en error de derecho el Tribunal de Primera Instancia al dictar sentencia sumaria y declarar válidos los contratos de servicios médicos profesionales suscritos por los apelantes y el Fondo del Seguro del Estado, sosteniendo el carácter de contratista independiente de los primeros? La contestación es en la negativa. Veamos.
La parte apelante nos plantea, que de la propia faz del contrato entre las partes surge que los médicos generalistas están bajo un control absoluto de la Corporación del Fondo del Seguro del Estado, de ahora en adelante el Fondo, en términos contractuales y en la forma de desempeñarse como médicos. Sostiene su planteamiento al Tribunal sobre lo pactado entre las partes relativo a un programa de clínicas diseñado por el Fondo para la prestación de los servicios profesionales por los médicos generalistas, y aquella otra cláusula relativa a los testimonios periciales y adiestramientos a que quedaron éstos obligados. 
Hace referencia, además, para demostrar el alegado intenso control que ejerce el Fondo sobre los apelantes, a la parte segunda del contrato relacionada a las prescripciones de medicamentos, drogas y/o sustancias controladas a. los clientes de la agencia. 
Nos plantea el apelante, que la relación contractual establecida entre las partes que expresamente hace relación a la condición de contratista independiente de los apelantes, no constituye un factor determinante para considerar la inexistencia de la alegada relación contractual entre ellos de patrono y empleado. Arguye, que tal relación contractual no cumple con los criterios establecidos por nuestro Tribunal Supremo en Rivera v. Comisión Industrial, 101 D.P.R. 6 (1973) y Flores v. Ramos, 127 D.P.R. 601 (1990), que permita poder concluir sobre la condición de contratista independiente de los apelantes.
Los apelantes afirman no estar reclamando la aplicación a sus personas de los postulados del principio de mérito, al cual están acogidos los empleados del Fondo. Sin embargo, reclaman los beneficios a que alegadamente tienen derecho esos empleados, en virtud de la legislación protectora del trabajo, debido al alegado "absoluto grado de control" que ejerce esa agencia sobre su capacidad productiva.
El Tribunal de Primera Instancia resolvió dictar sentencia sumaria y desestimar la demanda presentada por los aquí apelantes, por ser el contrato uno claro y sin ambigüedad alguna en cuanto a que la intención de las partes era que los apelantes fueron contratados en calidad de contratistas independientes.
Como norma general, el empleado que trabaja por contrato para el Gobierno no es un empleado público, esto es, el contrato no genera un empleo en el Gobierno. Sin embargo, hay que examinar cada contrato separadamente en la forma, el modo y las condiciones en que se prestan los servicios, con énfasis particular en si los deberes y responsabilidades requeridos corresponden a un puesto que requiera el empleo de una persona en forma regular, a tiempo completo o parcial. Debe examinarse, además, si el contrato concede unos derechos y prerrogativas que, de ordinario, corresponden a un puesto regular, tales como licencia de vacaciones y por enfermedad, y la participación en el sistema de retiro de los empleados públicos. 
El criterio más importante para determinar la existencia de una relación patrono-empleado y no una de principal-contratista independiente, se refiere al control que se pueda reservar el patrono sobre el trabajo. Independientemente de si se ejercita o no, lo importante es la existencia del derecho o la autoridad para intervenir o controlar, que convertiría a la otra persona en empleado y no en contratista independiente. Ese mismo control puede ser ejercitado en distintas formas, y la relación entre las partes se podría determinar por la forma en que se ejercite ese control a la luz de las circunstancias de cada caso. 
*697 El contrato para la prestación de servicios médicos celebrado entre las partes establece lo siguiente:

"1) El médico generalista prestará sus servicios profesionales en aquellas facilidades del Fondo que fueren acordadas por mutuo acuerdo.

2) Tales servicios consisten en prestar asistencia médica a obreros cubiertos por el Fondo y a prestar testimonio y peritaje profesional ante la Comisión Industrial, y cualquier otro foro administrativo o judicial.

3) El médico generalista podrá atender hasta un máximo de diez (10) clínicas semanales, durante el horario de 8:00 A.M. a las 12:00 M. y de la 1:00 P.M. a las 4:30 P.M., siempre y cuando no exceda de 37.5 horas a la semana.

4) Cada clínica sería retribuida a razón de sesenta dólares ($60). El médico generalista, además, tiene derecho por cada medio día de adiestramiento a recibir el pago de una clínica. El médico generalista tendrá derecho al pago de dietas y gastos de transportación en todos los casos donde el Fondo le requiera su comparecencia ante la Comisión Industrial o cualquier otro foro administrativo o judicial para prestar testimonio.

5) La forma en que los médicos generalistas habrían de prescribirle medicación a los pacientes del Fondo (parte segunda del contrato). Sin embargo, no surge del contrato que el Fondo controle en forma alguna- los medios y manera de prestar sus servicios médicos.

6)Los médicos generalistas reconocieron y aceptaron en el contrato que es de su exclusiva responsabilidad, como contratistas independientes, efectuar los pagos correspondientes a las aportaciones del Seguro Social Federal y al Negociado de Contribución sobre Ingresos del Departamento de Hacienda. El Fondo notificará al Negociado de Contribución sobre Ingresos del Departamento de Hacienda de todos los pagos efectuados a los médicos generalistas, por los servicios profesionales que éstos le hayan prestado como contratistas independientes."

A base de lo pactado entre las partes, no surge el alegado intenso control que supuestamente ejerce el Fondo sobre los medios y manera de prestar los servicios médicos por los médicos generalistas. Tampoco surge que los apelantes sean empleados públicos de naturaleza regular. Concluimos que el error señalado no fue cometido.
La Regla 36 de Procedimiento Civil preceptúa lo referente a la sentencia sumaria. 
El propósito principal de la moción de sentencia sumaria es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo tanto no ameritan la celebración de un juicio en su fondo, ya que lo único que resta es dirimir una controversia de derecho. Utilizada de forma apropiada, la sentencia sumaria contribuye a descongestionar los calendarios judiciales. 
La Regla 36.2 de Procedimiento Civil permite a un demandado presentar una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. 
La Regla 36.3 de Procedimiento Civil dispone lo siguiente:

"La moción se notificará a la parte contraria con no menos de diez (10) días de anticipación a la fecha señalada para la vista. Con anterioridad al día de la vista, la parte contraria podrá [sic] notificar contradeclaraciones juradas. La sentencia solicitada se dictará inmediatamente si las alegaciones, disposiciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la • parte promovente. Podrá dictarse sentencia sumaria de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el 
*698
pleito.

La parte que solicita la sentencia sumaria en un pleito tiene la obligación de demostrar la inexistencia de una controversia real sobre todo hecho pertinente, que a la luz del derecho sustantivo determinaría que se dicte sentencia a su favor. 
 Cuando existe controversia en relación con los hechos esenciales no debe dictarse sentencia sumaria y cualquier duda debe resolverse en contra de la parte promovente. 

Para derrotar una moción de sentencia sumaria, la parte promovida opositora deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. No obstante, el sólo hecho de no presentar evidencia que controvierta la presentada por la parte promovente, no implica que necesariamente proceda la sentencia sumaria. 
 Los jueces no están constreñidos por los hechos o documentos evidenciarlos que se aduzcan en la solicitud de sentencia sumaria. Deben considerar todos los documentos en autos, sean o no parte de la solicitud, de los cuales surjan admisiones hechas por las partes." 

El procedimiento de sentencia sumaria no permite que el tribunal dirima cuestiones de credibilidad. 
En términos generales, al dictar sentencia sumaria el tribunal deberá: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente del tribunal; (2) determinar si el oponente de la moción controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando: (1) existen hechos materiales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o (4) como cuestión de derecho no procede. 
Aunque el tribunal dictará sentencia sumaria a su discreción, como regla general, no es aconsejable resolver sumariamente casos complejos o que envuelvan cuestiones de interés público. 
Por tratarse de un remedio discrecional, el uso del mecanismo de sentencia sumaria tiene que ser mesurado y procederá sólo cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos, surgiendo de los mismos que no existen controversias sobre los hechos materiales pertinentes y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria. 
Una parte tiene derecho a un juicio plenario cuando la más leve o mínima duda en cuanto a cuáles son los hechos. Toda duda en cuanto a la existencia de una controversia real debe resolverse en contra de la parte que solicita la sentencia sumaria. El propósito de utilizar un criterio tan estricto para evaluar una moción de sentencia sumaria es que no se ponga en peligro o se lesionen los intereses de las partes. 
El tribunal apelativo utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. 
Concluimos que, a base de nuestro expediente, no encontramos controversia sobre hechos materiales esenciales que adjudicar en el caso de autos en una vista evidenciaría. Ambas partes dirigen sus planteamientos a los términos y condiciones del contrato celebrado entre ellos.
111
Por los fundamentos antes expuestos, se confirma la sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
*699 ESCOLIOS 98 DTA 12
1. Apéndice V, págs. 64 y 65. Se refiere a la cláusula A, 2. (a) y (b) del contrato entre las partes, que reza de la forma siguiente:

"A. CLINICAS EN DISPENSARIOS

2.EL GENERALISTA prestará sus servicios profesionales bajo un PROGRAMA DE CLINICAS, según los siguientes términos básicos:

a. Podrá atender hasta un total de diez (10) clínicas semanales. Disponiéndose, que estas clínicas, sólo se prestarán de acuerdo al siguiente horario:

-Durante el horario de la mañana: el tiempo comprendido entre las ocho antes meridiano (8:00 A.M.) y las doce meridiano (12:00 M.).

-Durante el horario de la tarde: el tiempo comprendido entre la una pasado meridiano (1:00 P.M.) y las cuatro y treinta pasado meridiano (4:30 P.M.). EL GENERALISTA expresamente reconoce y acepta que por necesidades del servicio, el estricto cumplimiento de esta cláusula es una condición indispensable de este contrato.

B. El total de clínicas semanales en las cuales EL GENERALISTA preste sus servicios, no podrá exceder diez (10) clínicas ni treinta y siete y media (37.5) horas.

2. Apéndice V, pág. 65. Se refiere a las cláusulas B, 1 (a) y (b); C y D del contrato entre las partes, que reza de la forma siguiente:

B. TESTIMONIO Y PERITAJE PROFESIONAL

1. Cuando EL FONDO así lo requiera, EL GENERALISTA comparecerá ante la Comisión Industrial o cualquier otro foro judicial y/o administrativo a prestar testimonio sobre algún caso atendido por él o los servicios de peritaje profesional. Entendiéndose, que para estos servicios, se procederá de la siguiente forma:

a. EL FONDO notificará a EL GENERALISTA por lo menos con quince (15) días de antelación a la fecha en que su comparecencia sea requerida.

b. Con dicha notificación, EL FONDO igualmente informará a EL GENERALISTA la identificación del caso que se vaya a ventilar en dicha vista.

Disponiéndose, que si luego de cumplido este trámite, EL GENERALISTA se ve imposibilitado por justa causa, a cumplir con la comparecencia requerida, debe justificarlo por escrito al representante autorizado de EL FONDO que le requiera dicho servicio, al recibo de la notificación cursada por EL FONDO.

EL GENERALISTA, igualmente desempeñará cualquier otra función relacionada con su profesión que le sea requerida por EL FONDO y/o su representante autorizado por un período determinado de tiempo o durante el resto de vigencia de este contrato.

EL GENERALISTA se compromete mediante este CONTRATO a asistir a los entrenamientos a que sea citado relacionados con la fase médico-legal de EL FONDO, los cuales se llevarán a cabo durante los días, horas y lugares más accesibles y razonables a los intereses de AMBAS PARTES."

3. Apéndice V, págs. 65 y 66. Se refiere a la parte segunda del contrato en su totalidad, que reza de la forma siguiente:

*700
"SEGUNDA: PRESCRIPCIONES DE MEDICAMENTOS, DROGAS Y/O SUSTANCIAS CONTROLADAS

—EL GENERALISTA al prescribirle a los pacientes de EL FONDO que le sean referidos se compromete a cumplir fielmente con las siguientes normas:

I.Siempre utilizará para sus recetas, el Formulario FSE-1078 de EL FONDO.

2.Llenará completamente todos los encasillados del citado formulario, incluyendo los datos de identificación del paciente, en especial, el número de identificación de su caso.

3.EL GENERALISTA en todas las recetas que suscriba, independiente de sus iniciales y/o firma, tendrá que indicar, además, en forma clara, precisa y legible su nombre completo debajo de su firma o iniciales.

4. EL GENERALISTA se limitará a prescribir aquellos medicamentos, drogas y sustancias controladas incluidas en el Formulario de Medicinas que EL FONDO tiene establecido.

5. Las sustancias controladas prescritas por EL GENERALISTA deberán ser detalladas en el Formulario FSE-1078 aparte de aquel utilizado para prescribir otros medicamentos y drogas para el mismo paciente.

6. EL GENERALISTA tendrá que indicar en todas las recetas emitidas para sustancias controladas, los números de los certificados y licencias estatales y federales que le autorizan a prescribirlas. EL GENERALISTA se compromete a presentar el original de dichos certificados y licencias y suministrar copia de los mismos al momento del otorgamiento de este contrato, así como a mantenerlas vigentes durante el término de este contrato.

7. Toda receta emitida por EL GENERALISTA, no deberá exceder un período máximo de treinta (30) días o hasta la fecha de la próxima cita; de estos términos, el que sea menor.

8. Cualquier otra norma razonable que por necesidades del servicio, EL FONDO adopte durante la vigencia de este CONTRATO, la cual deberá ser previamente notificada a EL GENERALISTA por escrito."

4. Flores Román v. Ramos González, 127 D.P.R. 601 (1990).
5. Administrador F.S.E. v. Comisión Industrial, 101 D.P.R. 6 (1973).
6. Flores Román v. Ramos González, supra.
7. 32 L.P.R.A. Ap. IR, R. 36.
8. Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III.
9. Neca Mortgage Corporation v. A & W Developers S.E.. et als, 139 D.P.R. _ , 95 J.T.S. 10, opinión del 7 de febrero de 1995; Revlon Realistic, Inc. v. Las Américas Trust Company, 136 D.P.R. _ , 94 J.T.S. 27, opinión del 15 de marzo de 1994; Rodríguez v. Secretario de Hacienda, 136 D.P.R. _ , 94 J.T.S. 20, opinión del 7 de marzo de 1994; Worldwide Food v. Alberic Colón, supra; Roig Commercial Bank v. Rosario Cirino, 126 D.P.R. 613 (1990); Aseg. Lloyd's of London, etc. v. Compañía de Desarrollo Comercial de P.R. et als, 126 D.P.R. 251 (1990); Tello Rivera v. Eastern Airlines, 119 D.P.R. 83 (1987).
10. Méndez Arocho v. El Vocero, 131 D.P.R._, 92 J.T.S. 94, opinión del 30 de junio de 1992.
11. 32 L.P.R.A. Ap. III, R. 36.2.
12. Soto v. Hotel Caribe Hilton, 139 D.P.R. _, 94 J.T.S. 128, pág. 311, opinión de 17 de octubre de 1994.
*701 13. 32 L.P.R.A. Ap. III, R. 36.3.
14. Hurtado Latre v. Osuna v. Fresse, _ D.P.R._, 95 J.T.S. 98, pág. 1065, opinión de 30 de junio de 1995; Tello Rivera v. Eastern Airlines, 119 D.P.R. 83, 86 (1987).
15. Bonilla Medina v. P.N.P., _ D.P.R. _ (1993), 96 J.T.S. 33, pág. 790, opinión de 13 de marzo de 1996; Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. _, 90 J.T.S. 59, opinión de 30 de abril de 1990.
16. PFZ Properties, Inc. v. General Accident Ins. Co. P.R., Ltd., 138 D.P.R. _, 94 J.T.S., 116, opinión de 7 de septiembre de 1994; Rivera Santana v. Superior Packaging. Inc., 133 D.P.R. _, 92 J.T.S. 165, opinión de 9 de diciembre de 1992.
17. Cuadrado Lugo v. Santiago Rodríguez, supra.
18. PFZ Properties, Inc. v. General Accident Ins. Cp., P.R., Ltd., supra.
19. Ibid.
20. Ibid.
21. Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720 (1986); Roth v. Lugo, 87 D.P.R. 386, 397 (1963).
22. Mercado Riera v. Mercado Riera, supra.
23. Phillip Morris, Inc. v. Tribunal Superior, 103 D.P.R. 207 (1975).
24. Electro-Mechanical Corp. v. Oggan, 9 F. 3d 445 (6th. Cir. 1993); Lett v. Magnant, 965 F. 2d 251 (7mo. Cir. 1992); Burnett v. Dow Chem. Co., 849 F. 2d 1269 (10th. Cir. 1988); Helm v. Western Maryland Ry. Co., 838 F. 2d 729 (4to Cir. 1988); Gatx Aircraft Corp. v. M/V Courtney Leigh, 768 F. 2d 711 (5to Cir. 1985); Continental Cas. Co. v. City of Richmond, 763 F. 2d 1076 (9no. Cir. 1985); Mercantile Bank. & Trust Co. v. Fidelity & Deposit Co., 750 F. 2d 838 (11th. Cir. 1985); Burtnieks v. City of New York, 716 F. 2d 982 (2do Cir. 1983); Smith v. Our Lady of the Lake Hosp., Inc., 639 So. 2d 730 (La. 1994); O'Cain v. Harvey Freeman & Sons, Inc., 603 So. 2d 824 (Miss. 1991); Baugham v. American Tel. & Tel. Co., 410 S.E. 2d 537 (S.C. 1991); Reagan v. Union Oil Co. of California, 675 P. 2d 953 (Mont. 1984); Wright, Miller & Kane, op. cit., Vol. 10, 2da ed., § 2716, pág. 643.