No. 86-385

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

ROBERT W. BENSON and MARGARET BENSON
GREENE, individually and ROBERT W.
BENSON, as personal representative of
the Estate of Clara Worthen Benson,

Plaintiffs and Appellants,

-vs-

GEORGE W. DIEHL and ELIZABETH DIEHL;
THE DIEHL RANCH COMPANY, a corp.,
and THE DIEHL COMPANY, A Montana corp.,
the heirs of GEORGE W. PADBURY; W.T.
McCULLOUGH; and KAIZER CEMENT AND GYPSUM
CORP., et al.,

Defendants and Respondents.

APPEAL FROM: District Court of the Fifth Judicial District,
In and for the County of Jefferson,
The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Morrison Law Offices; Frank Morrison, Sr. argued,
Helena, Montana
Robert M. Peterson argued, Boulder, Montana

For Respondent:

Gough, Shanahan, Johnson & Waterman; Ward A. Shanahan
argued, Helena, Montana    (Kaiser)
Harrison, Loendorf & Poston; James T. Harrison, Jr.,
Helena, Montana (Diehl)
Hughes, Kellner, Sullivan & Alke; John L. Alke,
Helena, Montana (McCullough)

Submitted: June 3, 1987

Decided: August 21, 1987

Filed: AUG 21 1987

*Ethel M. Harrison*
Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court.

Plaintiffs appeal from the order of the Fifth Judicial District in and for Jefferson County, Montana, granting defendants' motion for summary judgment. We affirm the order of the District Court.

The plaintiffs/appellants, Bensons, instituted a quiet title action to approximately 120 acres in Jefferson County. The record owner of the property, both surface and mineral rights, is the defendant, Kaiser. The property was acquired from Diehl, by warranty deed recorded October 3, 1978. Kaiser has been in possession of the property since 1977 under a lease option agreement.

Bensons base their claim on a warranty deed in the chain of title dated January 18, 1944 conveying the property from Wyman P. Benson and Clara Worthen Benson to George Padbury, Jr., George Diehl and W. T. McCullough. The deed has no reservation of mineral interest. Bensons claim this deed, which was not recorded until August 21, 1950, was materially altered. They claim the original deed conveyed land to George Padbury only, and reserved the mineral rights to Bensons. McCullough is the only party to this deed who is still living. The whereabouts of the original deed is unknown, although Bensons have a document that they claim is the unsigned copy of the deed they claim was altered. This document contains a mineral reservation and George Padbury is the sole grantee.

Plaintiff Robert Benson claims his father, Wyman Benson, told him of the mineral reservation in 1945. Wyman died in 1964. His estate was probated in Idaho, but the mineral interest was not claimed as an asset. Clara Benson, Robert's mother, who discovered the carbon copy of the

2

claimed deed, died in 1981. Her estate also was probated in Idaho, and again the mineral reservation was not claimed as an asset in her estate.

Sometime after the deed was recorded, the various grantees engaged in partnership business activities involving their properties. Eventually the property was mortgaged and a number of quit claim deeds were filed. The District Court did not find, however, that any of this activity pointed to a material alteration of the deed or to any type of a caveat to a title examiner that the deed had been altered.

It is from these facts the District Court concluded Kaiser was entitled to summary judgment. Bensons appeal.

Summary judgment is proper when there are no genuine issues of material fact. Rule 56 M.R.Civ P., Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 637 P.2d 509. In determining the appropriateness of summary judgment, the court may review the complete file to determine whether there is a genuine issue of material fact. Reagan v. Union Oil Co. of Calif. (Mont. 1984), 675 P.2d 953, 41 St.Rep. 131. It is incumbent on Bensons to present evidence of a "material and substantial nature" which raises a genuine issue of fact in order to defeat the summary judgment motion. B.M. by Berger v. State of Montana (Mont. 1985), 698 P.2d 399, 401, 42 St.Rep. 272, 274.

We will consider whether there are genuine issues of material fact precluding entry of summary judgment, and whether the District Court erred in its application of the doctrine of laches.

The foregoing rules clearly prescribe the parameters within which we analyze summary judgment. The facts on which the trial court based its ruling are not in dispute. The documents purporting to prove that the deed was altered and therefore could not have passed title to the mineral rights

3

to Kaiser, consist of an unsigned, carbon copy warranty deed including a mineral reservation that is not on the recorded deed. Robert Benson testified his father, Wyman, told him about the mineral reservation in 1945, well before the deed was recorded. Wyman died in 1946, his estate was probated in Idaho, but the mineral interest was not claimed as an asset. Nor was it claimed when Robert's mother's estate was probated after her death in 1981. There is no question Kaiser relied on the public record, which contains a warranty deed with property descriptions that accurately reflect the Bensons' homesteads. The deed was executed and notarized January 18, 1944, but not recorded until August 1950. Bensons argue, however, the summary judgment order leaves numerous fact questions unanswered. They contend the District Court ignored Benson family records, which establish the negotiation and sale of the Benson homesteads to George Padbury only, and a jury should be allowed to determine which deed is the true deed.

The District Court properly concluded the Benson family records did nothing more than raise a suspicion that the recorded deed was altered. A suspicion, regardless of how particularized it may be, is not sufficient to sustain an action or to defeat a motion for summary judgment. Unsupported conclusory or speculative statements do not raise a genuine issue of material fact. The trial court has no duty to anticipate possible proof. Gates v. Life of Mont. Ins. Co. (Mont. 1982), 638 P.2d 1063, 1066, 39 St.Rep. 16, 19.

The overriding issue is whether the public has a right to rely on the public record. Bensons appear to be arguing that a party cannot expect to rely on the public record, even after a document has been of record for more than 30 years. At the same time, however, they assumed it was placed on the

4

public record to their benefit. We find these two positions to be contradictory, and agree with the District Court which stated:

> To sustain Plaintiff's position in this case would require the Court to completely ignore the recording statutes . . . To hold otherwise would shake the very foundation of established law and standards applicable to record titles to real property in Montana.

Bensons cannot have it both ways. Either the public record can be relied on by all parties or it cannot. Reversing the District Court, of course, would give a jury the opportunity to determine whether the deed was altered. Such a reversal also would cast doubt as to the validity of every recorded deed and wreak havoc in the county courthouse. More importantly, it would do nothing to resolve the issue of the parties' rights under the deed in question.

Montana's statutory scheme provides that instruments that are made with intent to defraud are "void as against every purchaser or encumbrancer for value of the same property or the rents or profits thereof." Section 70-20-401, MCA. The statutes, however, provide protection for purchasers in good faith and for value in § 70-20-404, MCA:

> The rights of a purchaser or encumbrancer in good faith and for value are not to be impaired by any of the foregoing provisions of this part.

It appears Bensons want to find the deed void pursuant to § 70-20-401, MCA, while denying Kaiser the protection of § 70-20-404, MCA, arguing it is not a bona fide purchaser. This is inconsistent with the facts. The District Court found "nothing in the abstract of title or the public record . . . which would defeat Kaisers's status as a buyer in good

5

faith without notice." The statute cannot be read, as Bensons argue, to affect the status of a grantee as a bona fide purchaser in good faith for value. It must be read to protect the grantee who is bona fide purchaser for value. Kaiser purchased the property in good faith by relying on the public record. Nothing on the record indicated any material alteration to the deed which would put Kaiser on inquiry.

> A person, in dealing with another in respect to real estate, may rely on the record title to the property, in the absence of actual knowledge of the title in fact, or of facts sufficient to put him on inquiry in respect thereto. If this were not so, no one would be safe in purchasing real estate, or in loaning upon the strength of it as security.

Kirgin v. Kirgin (1949), 123 Mont. 34, 38, 207 P.2d 557, 559.

The District Court found nothing that would point to a material alteration of the deed or any type of caveat to a title examiner that the deed had been altered. There is no evidence of any matter that would put a reasonable person on notice to inquire further. In short, there is nothing to suggest that Kaiser is not a bona fide purchaser in good faith and for value protected by § 70-20-404, MCA. Under the facts of this case, this result obtains whether or not the deed was altered.

Bensons argue the District Court should not have applied the doctrine of laches. While this doctrine is not sufficient in itself to sustain Kaiser's motion for summary judgment, the delay by Bensons to assert their claimed rights is of such duration and character as to render enforcement inequitable. Clayton v. Atlantic Richfield (Mont. 1986), 717 P.2d 558, 43 St.Rep. 717; Brabender v. Kitt (1977), 174 Mont. 63, 568 P.2d 547. There is no absolute rule pertaining to the doctrine of laches and each case is determined upon its

6

own special circumstances. Matter of Estate of Wallace (1980), 186 Mont. 18, 25, 606 P.2d 136, 140.

Bensons contend there must be a showing of negligence for the doctrine of laches to apply. While it may be true that Bensons had no duty to expunge a void deed to protect the public at large, they slept on their rights by not ascertaining the status of their property for nearly 40 years. If they believed the deed had been altered, they should have acted to protect their interest, since the alteration they claim was made clearly worked to their disadvantage. However, for more than 40 years Bensons assumed the deed had not been altered and that they retained the mineral interest in the property. It was during this period of time they slept on their rights, which militates for application of the doctrine of laches. Robert Benson testified his father informed him of the interest in 1944 and again in 1945. He assisted in the probate of his father's estate, yet did not list the property on the inventory and appraisement list in 1964. While personal representative of his mother's estate, Robert Benson again failed to list the property in 1981. Apparently he made no effort on either occasion to ascertain the correct status of the property. We repeat the adage that the concept of laches is fundamental to the notion of responsibility in general, and aids the vigilant who do not sleep on, or neglect, their rights.

We also look to "unexplained delay which would render enforcement of the asserted right inequitable." Peterson, 684 P.2d at 1066. Bensons would have us find the District Court in error because it applied the doctrine of laches by deciding numerous genuine issues of material fact. These facts, however, were not in dispute. The District Court found no evidence in the record sufficient to explain Bensons' delay. Nor do we. Absence from the state does not

excuse one from sleeping on his rights. Determination that mineral interests are unprofitable is irrelevant to the issue of delay in asserting one's ownership rights. If the deed had been altered, Bensons' vigilance would have unearthed that fact long ago. Bensons, however, predicate their entire argument against application of the doctrine of laches on the fact the deed had been altered. Thus their position with respect to application of laches is untenable.

To permit Bensons to come forward now to claim property that they have neglected for over 40 years would work a grave injustice on Kaiser. Kaiser purchased the property, correctly assuming it had clear title, and proceeded with well announced plans to mine it. The District Court did not err in applying laches, or in granting summary judgment.

We affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8

Mr. Justice John C. Sheehy, dissenting:


The Court should first identify the true nature of the instrument that is before us in this case. We are not dealing with a void deed; we are instead dealing with an alleged "altered instrument." There are sharp differences in legal consequences which result from an altered instrument, especially as concerns the nonconsenting party. It was explained in Smith v. Barnes (1915), 51 Mont. 202, 211, 212; 149 P.963:

> . . . Technically speaking, an "alteration" occurs when a written contract is intentionally changed in material respect after execution, by or at the insistence of one of the parties, and without the consent of the other . . . The legal effect of an alteration is to extinguish all the executory obligations of the contract in favor of the parties responsible as against the parties who do not consent (Revised Codes § 5069); and the appellant, if the change was an alteration procured by him, could not maintain this action, nor maintain any action, upon the contract, either in its original or its altered form (citing authority). But the nonconsenting party loses no right. He is not obliged to rescind or repudiate the contract as it actually was made. He may ignore the change, because it does not express his contract, and hold the other party to the contract according to its original terms (citing authority); and this, a right peculiar to the nonconsenting party in the case of an alteration, is the final effect of a spoliation as to both parties. The contract stands as originally made, without regard to the change (citing authority). So that, whether the change in question was an alteration or a spoliation, the right of Barnes to do what he seeks to do, and what the allegations of fraudulent procurement were clearly intended to entitle him to do, cannot be assailed.

It is insisted in this connection, however, that Barnes cannot stand upon the contract as it was actually made, because of ratification or waiver. This ratification or waiver is claimed because of his retention of the first payment after knowledge of the change, and 'because of his failure to examine his own copy or that of the bank, or to do anything to avoid the contract until May, 1911'. There is no room for this contention in the pleadings. Ratification and waiver are in the nature of estoppel, and to be available, they must be pleaded when an opportunity to make such plea is presented. (Citing authority.) Not only is there no such plea, but in point of fact there could be none, because the issues were made upon the character of the contract as executed. But this claim of ratification or waiver also betrays a misconception of Barnes' position. If, as we have held, he could ignore the change and stand upon the contract as made, he was certainly not required to avoid it. It was his right to retain the first payment, to permit the appellant to perform the contract, and to forfeit the payment, if the appellant failed. Unless Barnes received something from the appellant under the contract as changed, with knowledge of the change, his rejection, through the bank, of appellant's tenders gave notice of his refusal to abide the change. As he was not required to avoid the true contract, and as he could ignore the change until something occurred to compel him to accept or reject it, he could not be estopped by any action or inaction which amounted to anything less than an acceptance of the change. (Emphasis supplied.)

The law is, or was until this case, in case of an altered instrument, where the change was made without the consent of the other party, the nonconsenting party was not required to take any action, and thus there could be no charge against him, until he accepted the change, relating to laches, estoppel, waiver, or any like defense. In this case therefore the discussion of laches, or the effect of recording, under the facts adduced in this case, is irrelevant. Here Benson acted when he learned that the other

party and his successors were relying on the altered portion of the instrument.

We should reverse this case on the fact issue that is presented. The District Court granted a summary judgment. The fact issue to be determined in this case is whether we do have before us an altered instrument. In that regard, we are presented with the evidence of McCullough, who is named as a grantee in the altered deed, and who now claims in oral testimony that he was not a party to the deed, and had no knowledge that he was a grantee under the deed. Militating against his oral testimony now is an earlier deed that he made, with others, granting to Diehl Company this and other properties, but without a mineral reservation. This case requires a trier of fact to determine whether there is actually before us an altered instrument. If it does turn out that the instrument has been altered, the legal ramifications clearly follow. Laches and statutes of limitations and recording statutes have no application until the mining on the property has begun.

The reliance of the majority upon § 70-20-404, MCA, to protect Kaiser as an innocent purchaser for value is ill-founded. Section 70-20-404, MCA, applies only to fraudulent transfers made by grantors with fraudulent intent to defraud prior or subsequent purchases or encumbrancers. This instrument is not a fraudulent conveyance. It is an altered instrument, if it was altered, and it was altered by the grantee. This Court would do well not to mess up our property law by applying statutes that have no application.

The rule is that in the case of altered instruments, a deed fraudulently altered becomes void and a bona fide purchaser from the person altering it takes nothing by it. Mosely v. Magnolia Petroleum Co. (1941), 45 N.M. 230, 114 P.2d 740; 4 Am.Jur.2d.2c., Section 27, Alteration of

Instruments. The purchaser protects himself by exacting from his grantor the necessary covenants. The only effect of the alteration of the mineral reservation was to cloud Benson's title; the recording of an altered deed gives no notice to anyone because the altered portion of the deed is void and even a bona fide purchaser takes nothing by the alteration. Rasmussen v. Olsen (Utah 1978), 583 P.2d 50. The doctrine of bona fide purchaser applies only to purchasers of legal title to the mineral interest. Thomas v. Roth (Wyo. 1963), 386 P.2d 926.

_____
                John C. Sheehy
                Justice

I concur with the foregoing dissent.

_____
                William Greene
                Justice