No.   92-068

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

JAMES and LINDA NELSON, d/b/a
GOODTIME SPORTS, and NORTHWESTERN
NATIONAL INSURANCE GROUP, an
insurance company,

     Plaintiffs and Appellants,

-v-

THE MONTANA POWER COMPANY,
a Montana corporation,

     Defendant and Respondent.

APPEAL FROM:   District Court of the Sixth Judicial District,
               In and for the County of Park,
               The Honorable Byron Robb, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                E. Eugene Atherton, Kalispell, Montana; Tara DePuy,
                Kalispell, Montana

        For Respondent:

                Robert T. O'Leary, The Montana Power Company, Butte,
                Montana

Submitted on Briefs:   October 8, 1992

Decided:   February 11, 1993

**FILED**

Filed:  FEB 1 1 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a Sixth Judicial District Court, Park County judgment, granting the defendant's motion for summary judgment. We affirm.

The sole issue on appeal is whether the trial court erred in granting the defendant's motion for summary judgment.

On November 14, 1988, firefighters for the city of Livingston were called to the scene of a fire at Goodtime Sports, a local business, at about 12:30 p.m. No flames were evident but smoke was observed coming from under the eaves.

Livingston Fire Chief Frederick called the dispatch a short time later and requested that they alert Montana Power Company (MPC) about the fire and send workers out to turn the gas and electricity off. Jack Swanson, and Tom Petty, employees of MPC, arrived around 1:40 a.m. Swanson terminated the electricity and Petty stated that he observed a gas meter on the I Street side of the building and it appeared to be off. Petty then walked to the other side of the building and shut off a gas meter there and one at an adjacent building, in the company of Chief Frederick and Assistant Chief Parks.

An affidavit of Jack Swanson states that when he arrived at the scene of the fire, a few minutes before Perry, the building "was totally engulfed in flames and the back of the roof had fallen in." Tom Petty, in an interview on December 22, 1988, stated that the fire involved the whole building and the roof was caved in.

Chief Frederick concluded that the Nelson's loss for the fire

2

was total. (Chief's investigative report) Chief Frederick also stated that between 7:00 and 7:30 a.m., he noticed a gas meter on the I Street side was on so he used a wrench to turn the valve off. State Assistant Fire Marshall, Tom Selleck, stated in his investigative report that the probable cause of the fire was electrical wiring.

After the fire, the Nelsons filed a complaint, later amended, in which they claimed that a MPC employee "negligently, carelessly and recklessly carried out its duty of turning of (sic) the gas service.... As a proximate cause of the negligence...the fire in the subject building was fed by natural gas which severely complicated suppression efforts and created long and sustained burning leading to considerably more property damage than would have or should have occurred had the Defendant properly shut off the gas utility."

The defendant filed a motion for summary judgment in August of 1991. The motion was granted on December 2, 1991, and the judgment was entered on December 9, 1991. This appeal from that decision followed.

"Under Rule 56(c), M.R.Civ.P., summary judgment is proper if the record discloses no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law." Kaseta v. N. Western Agency of Gr. Falls (1992), 252 Mont. 135, 138, 827 P.2d 804, 806.

The Nelsons contend that there is a factual controversy which precludes a grant of summary judgment - "whether MPC carried out its duty to turn off the gas service to the building." MPC

3

counters that whether the gas was on or off, "there was no evidence that natural gas either fed the fire or contributed to its spread and resulting damage." Although there is a question about whether MPC turned off the gas service to Goodtime Sports, this Court agrees with MPC that no evidence was presented to show that natural gas fed the fire or increased the fire damage, regardless of whether the gas was on.

Firefighters Wagman and Spannring made full reports after the fire and neither mentions seeing blue flames or smelling natural gas, nor do they provide any information that might lead one to believe that natural gas was involved in feeding or increasing the fire. Also, neither Chief Frederick nor Assistant Fire Marshall Tom Selleck mention any such information in their reports. The Fire Chief's investigative report asks whether a fuel shutoff was involved in the fire and the Fire Chief answered that a fuel shutoff was "not applicable." The Assistant Fire Marshall's report did show that "[e]xamination of the suspended gas heater showed it had broken loose snapping the gas line when the roof collapsed on it. The area of the gas heater did not show the fire damage nor did it show the fire started in that area."

An affidavit by Jack Swanson, the MPC employee who arrived at the scene to turn off electrical service to Goodtime Sports, stated that he "never observed the distinctive blue flame of burning natural gas, nor did he smell any natural gas at the fire scene. Further, neither Chief Frederick nor any fireman at the scene mentioned or complained of natural gas to your Affiant."

4

Fire Chief Frederick's deposition statements do not reflect evidence that natural gas fed the fire either. When the Chief was asked whether he noticed any particular fire coming from any gas appliances, he stated, "No, I didn't." He was then asked if he noticed any fire coming from any gas piping and he replied, "No, I could not see any gas piping." He was then asked whether he could smell any gas and he answered that he did not.

The Chief stated that the fire was under control at about 6:00 a.m. when Fire Truck 1 returned to the station but he was still at the scene about 7:00 or 7:30 a.m. when he noticed the gas meter was still on. He was asked whether he smelled any gas between 6:00 a.m. and when he noticed the gas meter was on, and he noted that he had not smelled any gas. When asked whether he believed the fire, which was determined to have started because of an electrical wiring malfunction, would have completely destroyed the building whether the gas line was open, he replied that he did not have an opinion. Finally, MPC counsel asked whether it would be fair to say that as far as the Chief knew, there was no evidence that he saw or that was reflected in the firefighters' statements that "natural gas fed that fire in any way?" Fire Chief Frederick replied that there was no such evidence.

When the Chief was examined by Mr. Atherton, plaintiff's counsel, the attorney stated that he understood that the Chief "may be of the opinion that the reason you lost this particular building is not so much because it was a cockloft fire as much as it was because possibly it was being fed by some other fuel?" The Chief replied, "That's possible, yes." (Emphasis added.) Mr. Atherton

5

also asked if the Chief could think of any other reason that the fire may have been hotter in the area where the fire vented through the roof other than the possibility "of having a gas line feeding the fire at that location?" The Chief responded that he could not think of another reason.

The statements immediately preceding are speculative and conclusory. As we stated in Benson v. Diehl (1987), 228 Mont. 199, 203, 745 P.2d 315, 317, "[a] suspicion, regardless of how particularized it may be, is not sufficient to sustain an action or to defeat a motion for summary judgment. Unsupported conclusory or speculative statements do not raise a genuine issue of material fact. The trial court has no duty to anticipate possible proof." We conclude that summary judgment was properly granted because no genuine issue of material fact was raised.

AFFIRMED.

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

_____
Justice

6