No. 01-464

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 135

———————

INQUIRY CONCERNING                    )
COMPLAINTS OF:                        )
                                      )
SAMUEL L. HARRIS AND                       )
TROY NELSON DYE,                      )
                                      )        O R D E R
        Complainants,                 )           AND
                                      )        O P I N I O N
        v.                            )
                                      )
MICHAEL S. SMARTT,                    )
Justice of the Peace,                 )
                                      )
        Respondent.                   )

———————

¶1      In *Harris v. Smartt*, 2002 MT 239, 311 Mont. 507, 57 P.3d 58, this Court held that Justice of the Peace Michael Smartt's (Smartt) conduct in accessing sexually explicit images on his county-owned computer and exposing his co-workers to these images was conduct violating the Canons of Judicial Ethics warranting suspension from office. Further, this Court ordered that Smartt shall pay all costs of the proceeding.

¶2      Pursuant to the above order, the Judicial Standards Commission (the Commission) filed a statement of costs in the amount of $52,539.02 (Transcripts $2699.70; Expenses of Commission Members $1,025.31; Room rental $165; Legal fees and investigation $48,649.01). Smartt filed an objection to the Commission's statement of costs. In his

1

objection, Smartt raised six "general objections" and numerous "specific, line-item objections."

¶3	We determine that Smartt's first, second and fourth general objections are dispositive, and thus we need not address the other objections.

¶4	In his first general objection, Smartt contends: Rule 13(h) of the Judicial Standards Commission is unconstitutional; and, as a consequence, the Supreme Court is without authority to award the Commission's costs and attorney fees in judicial disciplinary proceedings.

¶5	In essence, Smartt contends that the Judicial Standards Commission is a constitutionally-mandated body under Article VII, Section 11, of the Montana Constitution and that the Commission's authority is limited by the constitutional mandate, and that the Constitution does not explicitly or impliedly grant the Commission any authority to adopt rules which assess costs and fees on a judge found to have violated the Canons of Judicial Ethics.

¶6	He further contends that the Supreme Court's role in matters of judicial discipline is limited by the Constitution to imposing retirement, censure, suspension or removal, Article VII, Section 11, and that the imposition of costs and fees is an unconstitutional extension of the Court's limited authority. In his fourth objection, Smartt argues that, as a matter of policy, the Court should not grant an award of costs and fees since such an award will have a chilling effect upon a judge's decision to defend against a charge of unethical conduct.

¶7     The Commission responds that Smartt, by failing to register timely objections to the imposition of costs and fees, has waived this issue. The Commission points out that in its Opinion and Recommendations to the Court, it "unanimously request[ed] that the Supreme Court enter its order that Justice of the Peace Smartt be assessed and pay the costs of this proceeding." Smartt did not object to this recommendation. Further, in our Opinion addressing Smartt's exceptions, we set forth, as issue number eight, "Should Smartt be assessed and ordered to pay the costs of this proceeding?" *Harris v. Smartt*, 2002 MT 239, ¶ 10, 311 Mont. 507, ¶ 10, 57 P.3d 58, ¶ 10. In answering that issue, this Court stated: "It is therefore ordered that Smartt shall pay all the costs of the proceedings involving these matters." *Smartt*, ¶ 87. Thus, the Commission argues that under the doctrine of collateral estoppel or "law of the case," Smartt is now precluded from challenging the award of costs and fees.

¶8     As to the merits of Smartt's constitutional and statutory challenge, the Commission posits that both the Constitution and statutory law, § 3-1-1105(2), MCA, accord the Commission rulemaking authority to implement the Commission's mandate. It is contended that Rule 13(h) is procedural in nature and is within the Commission's constitutional authority.

¶9     We address the issues as follows:

¶10     *Is Smartt precluded from challenging the award of costs and fees?*

¶11     The Commission contends that since Smartt failed to object to the Commission's recommendation or to the Court's order, he is precluded from challenging the award of costs

3

and fees. Smartt raises an issue as to whether the Commission or this Court has authority to impose costs and fees in light of the Constitution's limited grant of authority. In effect, Smartt argues that neither the Commission nor the Court has jurisdiction to impose fees and costs. A jurisdictional challenge cannot be waived; it can be raised at any time. It is well settled that the issue of a court's subject matter jurisdiction may be presented at any time. A party can never waive or consent to subject matter jurisdiction where there is no basis for the court to exercise jurisdiction. *Balyeat Law, PC v. Pettit*, 1998 MT 252, ¶ 15, 291 Mont. 196, ¶ 15, 967 P.2d 398, ¶ 15. Thus, despite Smartt's failure to object to the Commission's recommendation and failure to challenge this Court's imposition of costs through a petition for rehearing, we hold that he may still raise a jurisdictional challenge to the Commission's authority to recommend and the Court's authority to impose costs and attorney fees.

¶12    *Does Rule 13(h) exceed the Commission's authority under Art. VII, Sec. 11(2)?*

¶13    Unlike the Commission on Practice, which addresses lawyer discipline and is an arm of the Supreme Court, the Judicial Standards Commission is a constitutionally-recognized body. Article VII, Section 11, of the Montana Constitution, provides as follows:

> **Removal and discipline.** (1) The legislature shall create a judicial standards commission consisting of five persons and provide for the appointment thereto of two district judges, one attorney, and two citizens who are neither judges nor attorneys.
> (2) The commission shall investigate complaints, and make rules implementing this section. It may subpoena witnesses and documents.
> (3) Upon recommendation of the commission, the supreme court may:
> (a) Retire any justice or judge for disability that seriously interferes with the performance of his duties and is or may become permanent; or
> (b) Censure, suspend, or remove any justice or judge for willful misconduct in office, willful and persistent failure to perform his duties,

4

violation of canons of judicial ethics adopted by the supreme court of the state of Montana, or habitual intemperance.

(4) The proceedings of the commission are confidential except as provided by statute.

¶14 Pursuant to the above mandate, the legislature created a Judicial Standards Commission and provided that the Commission shall adopt rules for the conduct of its affairs. Section 3-1-1105(2), MCA. The Commission, in turn, adopted Rule 13(h) which provides, in part, as follows:

Should the commission find charges in a formal complaint to be true, and a recommendation for discipline as provided in Rule 9(c) be accepted and imposed by the supreme court, the responding judge may be assessed and required to pay all costs of the proceedings before the commission, including reasonable attorneys fees of the prosecuting attorney.

¶15 The question presented is whether this rule is necessary to the implementation of Art. VII, Sec. 11, Mont. Const., or appropriate for the conduct of the Commission's affairs or whether it exceeds that grant of authority and imposes sanctions beyond those contemplated by the Constitution.

¶16 As Smartt contends, the constitutional provision is very explicit as to what powers the Supreme Court has in disciplining a member of the judiciary. The Court may, upon recommendation of the Commission, retire, censure, suspend or remove any justice or judge. Is it within the power of the Court, in addition to the above, to require the judge or justice to pay the costs and attorney fees of the Commission? We think not. The Constitution is very explicit as to what sanctions the Court can impose upon recommendation of the Commission. This list of sanctions is exclusive. In *State v. Henry* (1995), 271 Mont. 491,

5

498, 898 P.2d 1195, 1199, we addressed the question of whether the District Court erred in ordering Henry to pay $10,550 as the costs of legal fees incurred by the Town of Darby in prosecuting his case. The legal fees were imposed as part of Henry's suspended sentence pursuant to § 46-18-201(1)(b), MCA (1993). That statute provided that during the period of suspension, the judge could impose any of the conditions listed in subsection (1)(a). Subsection (1)(a) allowed for the imposition of certain monetary obligations such as restitution and costs of court-appointed counsel. However, the statute did not authorize the imposition of the prosecution's legal fees.

> As a general rule, the express mention of a certain power or authority within a statute implies the exclusion of non-expressed powers. [Citation omitted.] Because the legislature expressly authorized the imposition of the costs of court-appointed defense counsel as a "reasonable condition" and did not provide for corresponding authority regarding prosecution legal fees, we conclude that the legislature did not intend to authorize the imposition of prosecution legal fees as a condition of a suspended sentence.

*Henry,* 271 Mont. at 498, 898 P.2d at 1199.

¶17 In like manner, the framers of the Constitution specified what the Commission can recommend and what sanctions the Supreme Court can impose; retirement, censure, suspension or removal from office. *Expressio unius est exclusio alterius*. The express mention of the above sanctions implies the exclusion of non-expressed sanctions. We conclude that the imposition of costs and attorney fees exceeds the power granted to either the Commission or this Court by the Montana Constitution.

¶18 The Commission contends that the principal limitation on its rule-making authority is that the rules adopted must be procedural as opposed to substantive in nature. The

6

Commission contends that Rule 13(h) comes within its constitutional authority to adopt rules to "implement" and the statutory authorization to adopt rules for the "conduct of its affairs." Section 3-1-1105(2), MCA. The Commission relies on the North Dakota decision in *Matter of Cieminski* (N.D. 1978), 270 N.W.2d 321,[1] for the proposition that assessment of costs "has a useful purpose and serves as a deterrent to conduct not in harmony with the Code of Judicial Conduct." *Cieminski*, 270 N.W.2d at 335. This quote from *Cieminski* highlights the substantive nature of a rule imposing costs and fees. Such a rule serves as a deterrent and is thus substantive rather than procedural. As the $52,000 statement of costs in the present case graphically illustrates, an award of costs and attorney fees amounts to a very substantive "deterrent." The prospect of having to pay not only one's retained counsel but also the costs and attorney fees of counsel for the Commission would not only serve to deter unethical conduct but also would most certainly serve to deter judges from properly defending a charge of unethical conduct. As the North Dakota Court acknowledged:

> We recognize that costs in some instances can be extremely high and may have a chilling effect upon a judge complained against to properly defend himself, and for that reason we believe the order should specify a certain amount or state that the amount is not to exceed a specific sum.

*Cieminski*, 270 N.W.2d at 335.

¶19    The dissent asserts that the practical result of our decision is that "the taxpayers, who have already paid for Smartt's lengthy suspension with pay, will now also assume the costs

---

[1] Unlike Montana's constitutionally-mandated Judicial Standards Commission, North Dakota's Judicial Qualifications Commission is a creature of statute.

of his vigorous defense of the complaint against him," thereby exacerbating the present shortfall of government resources. This is not an accurate characterization. Mr. Smartt has always been responsible for his own defense costs and attorney fees. Nothing herein changes that. The issue here is not who is responsible for paying Smartt's fees but who is responsible for paying for the costs and fees incurred in performing the Commission's constitutional functions. The rights and responsibilities contained in our Constitution do not come without a cost. They are secure only to the extent that the governmental structures designed to implement them are adequately funded. As pointed out above, the Commission is a creature of constitutional mandate. Art. VII, Sec. 11, Mont. Const. As an arm of the State of Montana, its essential functions must be funded by the State of Montana. It is no more Smartt's responsibility to pay the Commission's attorney fees than it is the responsibility of someone accused of a crime to pay the prosecution fees or the Judge's salary.

¶20 We hold that the imposition of costs and attorney fees upon the judge complained against constitutes a substantive sanction and thus exceeds the constitutional powers of both the Commission and this Court.

¶21 We vacate our prior order requiring Smartt to pay all the costs of the proceeding. The Commission's Statement of Costs is denied.

DATED this 29th day of April, 2003.

/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER
/S/ JIM REGNIER

8

District Judge John W. Larson, sitting for Justice Patricia O. Cotter, dissenting on the issue of imposition of costs.

¶22    Rule 13(h) of the Rules of the Judicial Standards Commission states in relevant part:

> Should the commission find charges in a formal complaint to be true, and a recommendation for discipline as provided in Rule 9(c) be accepted and imposed by the supreme court, the responding judge may be assessed and required to pay all costs of the proceedings before the commission, including reasonable attorneys fees of the prosecuting attorney.

¶23    In its November 30, 2001, Opinion and Recommendations, the Commission unanimously recommended that the Supreme Court order that Michael S. Smartt be assessed the costs of the proceeding. Although Smartt filed more than 38 objections to the Commission's recommendations, he did not challenge the recommendation concerning the assessment of costs of the proceedings.

¶24    In the October 25, 2002, decision on the merits, the Court ordered that the Commission's recommendation on costs be implemented. The Court directed the Commission to submit a statement of costs to the Clerk of the Supreme Court within ten days and granted Smartt ten days to file any objections to the costs assessed against him. Then the Court stated it would "enter a final order regarding the costs assessed against Smartt." Harris v. Smartt, 2002 MT 239, ¶ 87, 311 Mont. 507, ¶ 87, 57 P.3d 58, ¶ 87.

¶25    Now, the Court, albeit a different majority than the one affirming the Commission's decision, has withdrawn its earlier decision awarding costs and attorney's fees for substantive reasons raised, not just after appeal but for the first time, after decision. This process denies any opportunity to consider the reasonableness of the Commission's assessed

10

costs at a hearing and reallocates them under the broad brush of constitutional interpretation. Even to casual observers of our appellate system, well-established precedent has sometimes been too easily sacrificed to achieve case-by-case results desired by a majority. Now such uncertainty and lack of predictability are heightened by this post-decision change.

¶26    By basing its decision on subject matter jurisdiction, the majority avoids addressing the issue of law of the case, and predictability of decision making. If a valid subject matter jurisdiction challenge could be made here, the majority would be correct to review the challenge at this final stage of the proceedings. But the subject matter jurisdiction challenge is not valid and Smartt has waived his right to object absolutely to the imposition of costs (as opposed to the details of the costs themselves).

¶27    Section 11 of Article VII of the Montana Constitution clearly envisions an independent agency with the power to make operational rules and conduct proceedings concerning judicial discipline and removal. Only those limitations expressed in the Constitution can be applied. As the Court stated in the only other decision directly interpreting this Constitutional provision,

> Article VII, § 11, 1972 Montana Constitution establishing the Judicial Standards Commission, is not so much a limitation upon the powers of the Commission as it is a limitation upon the power of this Court to act in matters of judicial discipline. The Commission's power to investigate complaints, to make rules implementing the constitutional section, and its power to issue subpoenae is not hedged with constitutional limits of any kind. The safety valve which is placed upon the wide-angled powers of the Commission is the limitation on this Court to act on the recommendations of the Commission.

11

State ex rel. Shea v. Judicial Standards Comm'n (1982), 198 Mont. 15, 27, 643 P.2d 210, 216; see also Powder River County v. State, 2002 MT 259, ¶ 68, 312 Mont. 198, ¶ 68, 60 P.3d 357, ¶ 68.

¶28 The Constitution does not express limitations as to how the Commission investigates complaints. Providing for staff and the costs of contested proceedings are necessary essentials well within the wide discretion the Constitution has provided. Rather than rely on their longstanding rule of Constitutional interpretation, the majority now views the Constitution as a grant, not a limitation of power in requiring the express delegation of a power to assess costs in Article VII, Section 11, Montana Constitution.

¶29 The majority phrases the question presented here as whether Rule 13(h) is "necessary to the implementation" of the constitutional provision, or "appropriate for the conduct of the Commission's affairs" or whether "it exceeds that grant of authority and imposes sanctions beyond those contemplated by the Constitution." The majority cites no law in support of this heightened standard for the Commission's rules. We should apply a reasonableness standard here. Article VII, Section 11(2) states, in part, that the "[C]ommission shall . . . make rules implementing this section." Accordingly, the Montana Legislature enacted § 3-1-1105(2), MCA, providing the Commission could "make rules for the conduct of its affairs." It is well within the purview of this broad authority for the Commission to adopt a rule providing for imposition of costs of the proceeding.

¶30 Nor is the imposition of costs in this matter a substantive sanction. It is procedural in nature. As pointed out in the Commission's Response to Smartt's Exceptions to Statement

12

of Costs, the rule on imposition of costs is reciprocal. Had Smartt prevailed in this proceeding, he could have recovered his costs and attorney's fees.

¶31 Limiting access to funding these proceedings, particularly when the Judicial Standards Commission's recommendations are upheld by the Supreme Court, will only encourage contests and result in more delay, cost and public frustration with this process. While it may be argued that the amount of fees is relatively small, so is our judicial budget at approximately 2.5% of the State's total general fund appropriations in H.B. 2.

¶32 Since the majority has chosen to interpret and then create a new constitutional limitation on the award of attorney's fees in ethical cases involving judges when the Commission decision is upheld, it necessarily assumes those funding responsibilities. Thus the taxpayers, who have already paid for Smartt's lengthy suspension with pay, will now also assume the costs of his vigorous defense of the Complaint against him. There is presently a shortfall of government resources. One only need look to the State of Oregon, where courts are closed one day a week and attorneys not provided in non-violent felony matters; or to the State of Washington, where courthouses have been shut down, to see this. The majority here, as a practical matter, is deciding to cut other essential court services to fund an ethics proceeding against a judge in which the Judicial Standards Commission's recommendations were upheld.

¶33 This funding shift for contested ethical proceedings will multiply with more resources diverted away from essential court services, resulting in additional delay and expense to those most harmed by ethical violations—the people of Montana.

13

/S/ JOHN W. LARSON
John W. Larson, District Judge
sitting for Justice Patricia O. Cotter


Chief Justice Gray and Justice Jim Rice join in the foregoing dissenting opinion of District Judge John W. Larson.

/S/ KARLA M. GRAY
/S/ JIM RICE