No. 04-295

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 387N

RICHARD MOTTA,

          Plaintiff and Appellant,

     v.

PHILIPSBURG SCHOOL BOARD TRUSTEES,
DISTRICT #1, CHARLIE GOFF, MARIE CONN,
ED DALLASERRA, TOM HOOD, WARREN ANDERS,

          Defendants and Respondents.


APPEAL FROM:    The District Court of the Third Judicial District,
                    In and For the County of Granite, Cause No. DV 2001-03,
                    Honorable Ted L. Mizner, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Richard A. Motta, Pro Se, Philipsburg, Montana

        For Respondents:

            Blaine C. Bradshaw, County Attorney, Philipsburg, Montana


                             Submitted on Briefs:  October 14, 2004

                                 Decided:  December 28, 2004

Filed:

                                Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Richard A. Motta appeals from the District Court's order denying his request to void both the Philipsburg's United States Department of Education (DOE) Goals 2000 Grant (Goals Grant) and the District Court's sanctions against him.

¶2 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

## BACKGROUND

¶3 Many of the facts of this case are the same as those in *Motta v. Philipsburg Sch. Bd. Trustees Dist. #1*, 2004 MT 256, 323 Mont. 72, 98 P.3d 673 (*Motta I*). In addition to those recited there, Dr. David Lee was, at the time of these incidents, the Superintendent of the Philipsburg School District No. 1 (the School District). Larry Baldwin, then-Chairman of the Philipsburg School Board of Trustees (the School Board), signed an affidavit declaring that "our Board of Trustees had given him general authority to apply for such grant moneys; this power is subject to the Board of Trustees formal approval; . . . ." The School Board had given Lee general authority to apply for grant money. Lee used his authority to apply for Federal Goals 2000 Grant money. After the DOE accepted his application, he entered into an agreement with Northwest Research Educational Laboratories to provide workshops for administrators, teachers, and other selected community members.

2

¶4    By the time the School Board approved the Goals Grant on February 20, 2001, Lee had already spent $15,720.81 on services furthering the Goals Grant. Motta was present for many of the School Board meetings, but was unsatisfied with the resolutions. He brought four cases in the District Court alleging, *inter alia*, the School Board violated open meeting laws and this is one of those cases. *See Motta I*. After almost two years of litigation, the District Court ordered Motta and the School Board engage in mandatory mediation.

¶5    Motta filed a Motion for Reconsideration of Mediation Order in which he stated to the District Court that mediation "notifies pro se litigants that they are not going to be afforded remedy in the courts and advises public agencies that they will be protected by the courts from their illegal acts," "Plaintiff's understanding of mediation is that the court has ruled on the findings of the case and is seeking a mediator to determine an equitable monetary settlement," and "Plaintiff fails to understand the ramification [sic] of sanctions. From the Plaintiff's prospective [sic], the message seems to be that pro se litigant's [sic] are not going to be afforded access to the courts without penalty." Although Motta nonetheless attended mediation, it failed to resolve the dispute. The District Court found that "Plaintiff . . . has been given every opportunity to bring these matters to a conclusion. Instead, Plaintiff has chosen to harass his community with demands that violate Montana Code."

¶6    Motta raises the following issues on appeal:

¶7    1. Whether the school superintendent could have the authority to apply for federal grants.

3

¶8 2. Whether the District Court erred in holding Lee had general authority to apply for grants.

¶9 3. Whether the District Court abused its discretion when it failed to void the Goals Grant.

¶10 4. Whether § 2-3-203(4)(a), MCA (2001), allowing a school board to discuss litigation strategy involving a private party outside public scrutiny is a unconstitutional exception to the Right to Know provisions in Article II, Section 9, of the Montana Constitution.

¶11 5. Whether the District Court properly assessed sanctions against Motta.

¶12 6. Whether Motta is entitled to his costs.

## STANDARD OF REVIEW

¶13 The decision to grant summary judgment is a matter of law that we review *de novo*. If the non-moving party fails to provide substantial evidence raising a genuine issue of material fact, the District Court must decide whether the moving party is entitled to judgment as a matter of law. This Court reviews that decision "to determine whether the District Court erred." *Motta I*, ¶ 11.

## DISCUSSION

## I

¶14 Motta argues that § 20-9-603, MCA (2001), gives exclusive authority to the Governor and Superintendent of Public Instruction to accept federal grants. That power does not exclude the district superintendent from acting under § 20-3-208, MCA (2001) (giving the county superintendent the authority to accept money on behalf of the school district). This

4

case, however, concerns the power of a district superintendent accepting money on behalf of a school district. These positions are all distinct and all have different obligations and responsibilities. Section 20-1-101(6), (7), (16), MCA.

¶15 The Legislature has given the power to accept federal grants to the Governor, Superintendent of Public Instruction, and county superintendents. *Expressio unius* directs courts that the "expression of one thing suggests the exclusion of others." William N. Eskridge, Jr. et al, Cases and Materials on Legislation: Statutes and the Creation of Public Policy app. 19 (3rd ed. 2002); *Harris v. Smartt*, 2003 MT 135, ¶ 17, 316 Mont. 130, ¶ 17, 68 P.3d 889, ¶ 17. Thus, by directly granting power to accept federal grants to some offices, *expressio unius* implies the legislature must have intended to exclude that power from all other offices, including the district superintendent.

¶16 However, we cannot construe these statutes as precluding a school board from delegating authority to a district superintendent to apply for grants. Montana Constitution provides that "[t]he supervision and control of schools in each district shall be vested in a board of trustees to be elected as provided by law." This "supervision and control" includes the power to delegate to the district superintendent the authority to apply for federal grants on behalf of the respective school district.

## II

¶17 Larry Baldwin executed an affidavit stating that the School Board gave Lee general authority to apply for grants. Motta has offered no evidence to the contrary, but has only asserted this mere affidavit is insufficient proof. "'Unsupported conclusory or speculative

5

statements do not raise a genuine issue of material fact. The trial court has no duty to anticipate possible proof.'" *Nelson v. Montana Power Co.* (1993), 256 Mont. 409, 412, 847 P.2d 284, 286 (quoting *Benson v. Diehl* (1987), 228 Mont. 199, 203, 745 P.2d 315, 317). Motta has failed to raise a genuine issue of material fact. We affirm the District Court.

### III

¶18 Motta argues that the District Court abused its discretion by refusing to void the Goals Grant. As noted earlier, no statute specifically gives district superintendents the authority to apply for grants. Nevertheless, Baldwin's affidavit declares that the School Board gave Lee general authority only to *apply* for grants; it did not give Lee the authority to *accept* the grants. Here, the School Board approved the grant only after Lee had spent almost $16,000. The School Board would have a much more difficult time rejecting the grant after Lee spent the money. Spending money on behalf of the school district exceeded Lee's limited authority to apply for grants.

¶19 In *Motta I*, the District Court found the School Board had violated § 2-3-103, 212, MCA (2001). Despite those transgressions, we affirmed the District Court's decision under § 2-3-213, MCA (2001), not to void the agreement of February 13, 2001, between the School Board and the Philipsburg United Teachers Association because it was a discretionary decision. We expressed our confusion in *Motta I*: "As a practical matter, we are at a loss to determine what would be the legal effect, if any, were we to void an Agreement which has run its course and has presumably expired." ¶ 19.

¶20 Section 20-3-208, MCA (2001) provides no specific remedy. Unlike *Motta I*, the District Court here did not rule on whether to void the contract. Nonetheless, we have the same dilemma as in *Motta I*: what is the legal effect, if any, of voiding an agreement that has already run its course? Since this is a question more appropriately addressed by the District Court, we reverse and remand this matter to the District Court to determine whether to void the contract and to set forth its rationale for its decision.

## IV

¶21 Motta contends that § 2-3-203(4)(a), MCA (2001), allowing a school board to discuss litigation strategy involving a private party outside public scrutiny is a unconstitutional exception to the Right to Know provisions in Article II, Section 9, of the Montana Constitution. That statute provides:

> (4)(a) However, except as provided in subsection (4)(b), a meeting may be closed to discuss a strategy to be followed with respect to litigation when an open meeting would have a detrimental effect on the litigating position of the public agency.
> (b) A meeting may not be closed to discuss strategy to be followed in litigation in which the only parties are public bodies or associations described in subsections (1) and (2).

Because he did not raise that issue in the court below, we refuse to address it here.

## V

¶22 Rule 11, M.R.Civ.P., sanctions are appropriate if a lawyer violates an element of the rule:

> **Signing of pleadings, motions, and other papers—sanctions**. . . . A party . . . shall sign the party's pleading, motion, or other paper . . . . The signature . . . of a party constitutes a certificate . . . that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry

> it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Motta should have researched the meaning of mediation before challenging the court's mediation order. Nevertheless, given his pro se nature, and meritorious contentions, we conclude his actions fail to rise to the level of sanctionable behavior and, thus, we reverse the imposition of sanctions.

## VI

¶23 As in *Motta I*, ¶ 23, the District Court did not address Motta's request for costs of suit. Since an award of costs is discretionary, we remand to the District Court to decide whether to award Motta his costs pursuant to § 2-3-221, MCA (2001), and to set forth its rationale if it refuses to award costs.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE