No. 04-296

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 1N

RICHARD MOTTA,

        Plaintiff and Appellant,

    v.

PHILIPSBURG SCHOOL BOARD TRUSTEES,
DISTRICT #1, CHARLIE GOFF, MARIE CONN,
ED DALLASERRA, TOM HOOD, WARREN ANDERS,

        Defendants and Respondents.


APPEAL FROM:    The District Court of the Third Judicial District,
                   In and For the County of Granite, Cause No. DV 2001-04,
                   Honorable Ted L. Mizner, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

            Richard A. Motta, Pro Se, Philipsburg, Montana

        For Respondents:

            Blaine C. Bradshaw, County Attorney, Philipsburg, Montana


                           Submitted on Briefs:  October 14, 2004

                                   Decided:  January 3, 2005


Filed:

                                 Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Richard A. Motta appeals from the District Court's order denying his request to void the contract (Contract) between Northwest Research Educational Laboratories (NWREL) and the Philipsburg School District No. 1 (the School District).

¶2 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

## BACKGROUND

¶3 Many of the facts of this case are the same as those in *Motta v. Philipsburg Sch. Bd. Trustees Dist. #1*, 2004 MT 256, 323 Mont. 72, 98 P.3d 673 (*Motta I*). In addition to those recited there, Dr. David Lee was, at the time of these incidents, the Superintendent of the Philipsburg School District No. 1 (the School District). Larry Baldwin, then-Chairman of the Philipsburg School Board of Trustees (the School Board), signed an affidavit declaring that "our Board of Trustees had given him general authority to apply for such grant moneys; this power is subject to the Board of Trustees formal approval; . . . ." The School Board had given Lee general authority to apply for grant money. Lee used his authority to apply for Federal Goals 2000 Grant money.

¶4 In August 2000, after the United States Department of Education (DOE) accepted his application, Lee entered into an agreement on behalf of the School District with NWREL to

2

provide workshops for administrators, teachers, and other selected community members. The Contract specifically provided that "[t]his is a contract between [the School District] . . . and [NWREL] . . . for the performance of the work set forth below," but, toward the end, it allows that "[t]his agreement may be terminated by the mutual, written consent of the *three* parties" (emphasis added). Lee never bid the contract, but awarded it directly to NWREL. Before the DOE had paid the grant, Lee used money from the Miscellaneous Fund 215 to pay NWREL and then reimbursed that fund when the federal grant money arrived.

¶5     At the February 27, 2001, meeting, the School Board approved the Contract. Motta was present for many of the School Board meetings relating to the Goals 2000 Grant, but was unsatisfied with the resolutions. He brought four cases in the District Court alleging, *inter alia*, the School Board violated open meeting laws and this is one of those cases. *See Motta I*. After almost two years of litigation, the District Court ordered Motta and the School Board to ultimately unsuccessful mandatory mediation. A hearing on summary judgment followed, and Motta appeals from the District Court's Opinion and Order.

¶6     He raises the following issues on appeal:

¶7     1. Whether the school superintendent could have the authority to apply for federal grants.

¶8     2. Whether the District Court erred in holding Lee had general authority to apply for grants.

¶9     3. Whether the District Court abused its discretion by failing to void the Contract.

3

¶10    4. Whether the School District should have bid out the Contract.

¶11    5. Whether Lee misappropriated funds to pay for the Contract.

¶12    6. Whether the reference to "three parties" was a typographical error.

¶13    7. Whether § 2-3-203(4)(a), MCA (2001), allowing a school board to discuss litigation strategy involving a private party outside public scrutiny is a unconstitutional exception to the Right to Know provisions in Article II, Section 9, of the Montana Constitution.

¶14    8. Whether Motta is entitled to his costs.

## STANDARD OF REVIEW

¶15    The decision to grant summary judgment is a matter of law that we review *de novo*. If the non-moving party fails to provide substantial evidence raising a genuine issue of material fact, the District Court must decide whether the moving party is entitled to judgment as a matter of law. This Court reviews that decision "to determine whether the District Court erred." *Motta I*, ¶ 11.

## DISCUSSION

## I

¶16    Motta argues that § 20-9-603, MCA (2001), gives exclusive authority to the Governor and Superintendent of Public Instruction to accept federal grants. That power does not exclude the district superintendent from acting under § 20-3-208, MCA (2001) (giving the county superintendent the authority to accept money on behalf of the school district). This case, however, concerns the power of a district superintendent accepting money on behalf

4

of a school district. These positions are all distinct and all have different obligations and responsibilities. Section 20-1-101(6), (7), (16), MCA.

¶17 The Legislature has given the power to accept federal grants to the Governor, Superintendent of Public Instruction, and county superintendents. *Expressio unius* directs courts that the "expression of one thing suggests the exclusion of others." William N. Eskridge, Jr. et al, Cases and Materials on Legislation: Statutes and the Creation of Public Policy app. 19 (3rd ed. 2002); *Harris v. Smartt* (2003), 2003 MT 135, ¶ 17, 316 Mont. 130, ¶ 17, 68 P.3d 889, ¶ 17. Thus, by directly granting power to accept federal grants to some offices, *expressio unius* implies the legislature must have intended to exclude that power from all other offices, including the district superintendent.

¶18 However, we cannot construe these statutes as precluding a school board from delegating authority to a district superintendent to apply for grants. Montana Constitution provides that "[t]he supervision and control of schools in each district shall be vested in a board of trustees to be elected as provided by law." This "supervision and control" includes the power to delegate to the district superintendent the authority to apply for federal grants on behalf of the respective school district.

## II

¶19 Larry Baldwin executed an affidavit stating that the School Board gave Lee general authority to apply for grants. Motta has offered no evidence to the contrary, but has only asserted this mere affidavit is insufficient proof. "'Unsupported conclusory or speculative statements do not raise a genuine issue of material fact. The trial court has no duty to

anticipate possible proof.'" *Nelson v. Montana Power Co.* (1993), 256 Mont. 409, 412, 847 P.2d 284, 286 (quoting *Benson v. Diehl* (1987), 228 Mont. 199, 203, 745 P.2d 315, 317). Motta has failed to raise a genuine issue of material fact. We affirm the District Court.

**III**

¶20 Motta argues that the District Court abused its discretion by refusing to void the Contract. As noted earlier, no statute specifically gives district superintendents the authority to apply for grants. Nevertheless, Baldwin's affidavit declares that the School Board gave Lee general authority only to apply for grants; it did not give Lee the authority to accept the grant and disburse money. Here, Lee signed the contract before obtaining the School Board's approval. That contract exceeded Lee's authority.

¶21 In *Motta I*, the District Court found the School Board had violated § 2-3-103, 212, MCA (2001). Despite those transgressions, we affirmed the District Court's decision under § 2-3-213, MCA (2001), not to void the agreement of February 13, 2001, between the School Board and the Philipsburg United Teachers Association because it was a discretionary decision. We expressed our confusion in *Motta I*: "As a practical matter, we are at a loss to determine what would be the legal effect, if any, were we to void an Agreement which has run its course and has presumably expired." ¶ 19.

¶22 No statute provides a specific remedy. Unlike *Motta I*, the District Court here did not rule on whether to void the contract. Nonetheless, we have the same dilemma as in *Motta I*: what is the legal effect, if any, of voiding an agreement that has already run its course? Since this is a question more appropriately addressed by the District Court, we remand this

6

matter to the District Court to determine whether to void the contract and to set forth its rationale for its decision.

## IV

¶23 Motta asserts that the Contract falls under § 20-9-204(3), MCA (2001), so the School District should have let the bid for the contract to conduct the workshops for the teachers, administrators, and other selected community members. The definition of contract in subsection (2) applies only to subsection (1). Subsection (3) includes professional services exceptions, so the Legislature must have intended to include professional services in subsection (3). This is a professional services contract, so the School District was required to let the contract "to the lowest responsible bidder after advertisement for bids." Section 20-9-204(3), MCA (2001). As noted in Part II, since this is a question more appropriately addressed by the District Court, we remand this matter to the District Court to determine whether to void the contract and to set forth its rationale for its decision.

## V

¶24 By spending the federal grant money before the School District received it, Motta argues Lee misappropriated funds for the Contract. Miscellaneous funds are nonbudgeted funds, so a school district cannot spend more money than is in the fund. Section 20-9-201, 210, MCA (2001). A school district cannot create new nonbudgeted funds for grants, but must, instead, use a miscellaneous fund and keep a separate balance for each grant project. Section 20-9-201, MCA (2001) (limiting the type of funds, which does not include grant

7

funds); § 20-9-507, MCA (2001) (requiring a school district to expend grant funds in accordance with the terms of the grant).

¶25 Thus, the school board may spend grant money from the miscellaneous fund if (1) the miscellaneous fund balance is always greater than or equal to zero and (2) the school board maintains a separate balance for the grant project within the miscellaneous fund—even if the balance for the grant project is negative. These elements were present, so Lee did not misappropriate funds. We affirm the District Court.

### VI

¶26 The Contract mentions no other parties and provides space for only two entities' signatures, so the "three parties" phrase must have been a typographical error. The Contract's plain wording specifically provides "[t]his is a contract between [the School District] . . . and [NWREL] . . . for the performance of the work set forth below," but, toward the end, it allows that "[t]his agreement may be terminated by the mutual, written consent of the *three* parties" (emphasis added). Assertions that the "three parties" phrase is anything other than a typographical error are without merit. We affirm the District Court.

### VII

¶27 Motta contends that § 2-3-203(4)(a), MCA (2001), allowing a school board to discuss litigation strategy involving a private party outside public scrutiny is a unconstitutional exception to the Right to Know provisions in Article II, Section 9, of the Montana Constitution. That statute provides:

8

(4)(a) However, except as provided in subsection (4)(b), a meeting may be closed to discuss a strategy to be followed with respect to litigation when an open meeting would have a detrimental effect on the litigating position of the public agency.

(b) A meeting may not be closed to discuss strategy to be followed in litigation in which the only parties are public bodies or associations described in subsections (1) and (2).

Because he did not raise that issue in the court below, we refuse to address it here.

## VIII

¶28 As in *Motta I*, ¶ 23, the District Court did not address Motta's request for costs of suit in its Order and that decision is discretionary. We remand to the District Court to decide whether to award Motta his costs pursuant to § 2-3-221, MCA (2001), and to set forth its rationale if it refuses to award them.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE